**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANNIE M . HODGES-ROBINSON,

        **Plaintiff,**

v.                                    **Case No.  8:05-cv-472-T-27TBM**

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

       The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1]  I recommend that the court affirm the decision of the Commissioner.

### I.

       Plaintiff was forty-nine years of age at the time of her administrative hearing in May 2002.  Plaintiff has a Bachelor of Arts degree in psychology.  Her past relevant work was as an AFDC counselor, an adult and aged counselor, a foster care counselor, and a family support worker for the State of Florida.  Plaintiff applied for disability benefits in September 2000, alleging disability as of May 21, 1999, by reason of pain in her back, neck, head, and

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  See also M.D. Fla. R. 6.01(c)(21).

shoulders and functional difficulty with walking, bending, and carrying.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  In essence, Plaintiff testified that she was no longer able to work at any job by reason of pain and resulting functional limitations.  Plaintiff indicated that she was significantly injured in June 1998 while getting off of an airplane and a heavy bag fell on her head, neck, and shoulder.  According to Plaintiff, she has suffered migraine headaches for twenty years and experiences them one to two times per week.  By her account, the headaches last four to five hours, and she is unable to function and must take medication and lie down.  Plaintiff also claimed near-constant pain in her left hip when she sits and then tries to stand up.   According to her testimony, she has suffered such pain since January 2000, when she underwent a cervical fusion, which involved taking bones from her hip area.  Plaintiff also claimed pain and functional limitations with her left arm and hand, in which she experienced numbness, tingling, and weakness.  She has difficulty holding things with this hand and will drop things.  Plaintiff is right-hand dominant.  She had ligament surgery in July 2000 and at times must be guarded when using her right hand.   Plaintiff further described a constant painful left knee with a limited range of motion.  Plaintiff takes Vicodin, Imitrex, and Neurontin for pain in her hip, upper back, breast, left knee, and headaches.  The Imitrex makes her sleepy and drowsy.  She also testified to receiving Botox injections for her upper back pain.

Apart from her job as an AFDC counselor, Plaintiff described her other jobs as involving a good deal of physical activity and driving up to six hours a day.  According to the Plaintiff, she is unable to return to any of these positions by reason of her various conditions.  In addition to her physical impairments, Plaintiff also testified that she suffered from depression.

According to Plaintiff, walking is very painful, and she estimated that she could only walk for five minutes without assistance.  She occasionally uses a cane when walking.  Plaintiff estimated that she could sit for twenty minutes at a time without pain but could not sit for four to six hours in an eight-hour workday even if allowed to alternate positions.  If she attempted to do so, her upper back would begin to hurt, as would her hip.  Plaintiff estimated that she could only stand for about five minutes and lift between ten to fifteen pounds.  She could not touch either her toes or knees bending from the waist.

Plaintiff's daily regimen included taking medications and going to her doctors and physical therapy.  She testified that she could do household chores such as cleaning the sink and doing some laundry and  some cooking.  Plaintiff's workers' compensation claim arising from the falling luggage was settled sometime around the year 2000.  See Plaintiff's testimony (R. 488-506).

Additionally, the ALJ took testimony from Joyce Courtright, a vocational expert (hereinafter "VE").  The VE was asked to assume an individual of the same age, education, and work experience as Plaintiff with the ability to do light to sedentary exertional work, with occasional limitations for prolonged walking, overhead reaching, pushing, and pulling; frequent limitations for prolonged climbing or kneeling; but with the ability to perform fairly

detailed tasks in an environment that allows for a sit/stand option.  Upon this hypothetical, the VE testified that Plaintiff could still perform her past work as an eligibility worker.  The VE further opined that Plaintiff could do such sedentary jobs as a family case worker and unrelated unskilled jobs such as cashier II, small parts assembler, and telephone survey work.  On cross-examination by Plaintiff's counsel, the VE indicated that the job of eligibility worker involved interviews of individuals to determine whether they met the criteria for a specific program, including assisting with any required paperwork.  The job is a skilled occupation.

Counsel had difficulty forming a question to address Plaintiff's testimony that her depression caused concentration difficulties.  In response to Plaintiff's complaint that she had limitations with sitting, the VE observed that the eligibility worker position is a sedentary occupation that generally requires sitting six to eight hours a day.  If Plaintiff's testimony regarding her ability to sit or stand were fully credited, then the VE conceded that she might have difficulty holding the sedentary jobs of eligibility worker and family case worker, and her ability to do the light exertional work of cashier II might be affected, although each of the jobs identified would allow for a sit/stand option.  If Plaintiff were unable to hold parts with her left hand as she indicated, such limitation would eliminate the small parts assembler positions.  According to the VE, if Plaintiff's testimony regarding drowsiness and an inability to concentrate were fully credited, such impairments would affect her ability to perform the skilled work positions of eligibility work and case worker.  It would also affect her ability to do telephone survey work but would not affect her ability to do cashier II work.  Assuming Plaintiff suffered migraine headaches of the frequency to which she testified and was left

incapacitated for four to five hours at a time, such condition would eliminate any work. See (R. 506-19).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of June 25, 2000, the ALJ determined that while Plaintiff has severe impairments related to her status post-cervical surgery and post-arthroscopic surgery of both knees, she nonetheless had the residual functional capacity to perform work-related activities involving lifting and carrying up to twenty pounds occasionally and ten pounds frequently; with an occasional limitation for prolonged walking, overhead reaching, pushing, and pulling; and a frequent limitation for prolonged climbing and kneeling; but with the ability to perform fairly detailed tasks in an environment that allows for a sit/stand option.  Given this conclusion that Plaintiff could perform a restricted range of light work and given the testimony of the VE that there were jobs in the local and national economy that Plaintiff could still perform, the ALJ concluded that Plaintiff was not disabled.  (R. 21-30).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233

(11th Cir. 1983).

The scope of review is limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler,

704 F.2d 1207, 1209 (11th Cir. 1983).


III.

Plaintiff's multiple claims are summarized as follows:

- the ALJ failed to assess properly the records or opinions of treating neurologists

with regard to Plaintiff's claims of headaches.  In particular, Plaintiff cites to record

references from Dr. Patel and Dr. Alves, which she claims speak directly to severe headaches,

if not "migraine" headaches as she testified;

- new evidence submitted to the Appeals Council reflecting records from Dr. Alves

and Dr. Kuch support a remand as well as an award of benefits;

- the ALJ erred in posing an incomplete hypothetical to the VE because there was no

mention of headaches or her need to lie down due to fatigue or weakness;

- the ALJ failed to recognize her severe impairments individually or in combination.

Here, she claims impairments related to pain, headaches, an inability to stoop, usage of a

cane, problems with her hip, reflex sympathetic dystrophy syndrome (hereinafter "RSD"), left

shoulder problems, thoracic outlet syndrome, left hemicrania, and left occipital neuralgia

were overlooked;

- the ALJ mischaracterized the evidence from orthopedic surgeon, Dr. Dale Bramlett, as well as Dr. Alves and Dr. Patel;

- the combination of knee problems, right hand carpal tunnel, neck herniation, and difficulty walking or stooping indicates she meets the equivalence of "a listing";

- the ALJ erred in concluding that Plaintiff could perform light exertional work, and given that she is limited to sedentary work at best, the ALJ's conclusion violates Social Security Ruling 83-14, which prescribes that a younger person limited to unskilled sedentary work with a lack of bilateral dexterity should be determined to be disabled;

- the ALJ failed to apply the Eleventh Circuit pain standard in his evaluation and rejection of Plaintiff's subjective complaints of pain, an inability to stoop, the need for a cane, and emotional problems;

- the ALJ failed to develop the record fully by failing to order a psychiatric consultation;

- the ALJ engaged in "sit-and-squirm" jurisprudence by noting that Plaintiff sat at the hearing with no obvious problems and answered all questions in an appropriate fashion.

A.

Plaintiff contends that new evidence from treating neurologist, Dr. Angelo M. Alves, M.D., from 2001, 2003, and 2004, merits a remand for an award of benefits under the new evidence standard applicable in this circuit. In this circuit, a remand for consideration of new evidence is appropriate where the Plaintiff demonstrates the following: "(1) there is new, non-cumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is

8

good cause for the failure to submit the evidence at the administrative level." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986), and citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998)).

As reflected in the record, in October 2004, Plaintiff submitted to the Appeals Council additional records from Dr. Alves from 2001, 2003, and 2004, (R. 429-80), including a statement of physical capability dated July 12, 2004, (R. 477-80), and a report and statement by Jeffrey H. Kuch, M.D., a non-examining Veteran's Administration doctor, in which he opined that Plaintiff is 100% disabled and has been since 1999.  (R. 481-85).

Initially, I find no good cause for the failure of the Plaintiff to have submitted Dr. Alves's records from 2001 to the ALJ.  The decision in this case was rendered in June 2002, and Plaintiff makes no showing except to blame the ALJ for his failure to timely present these records.[2]  I also find no good cause for the untimely filing of a statement of physical capability by Dr. Alves.  Plaintiff makes no effort to explain why such statement was not timely submitted to the ALJ.  Surely, if counsel was able to obtain such statement in 2004, he could have timely presented it to the ALJ.  As for the statements of Dr. Kuch, they appear wholly conclusory and, more importantly, immaterial to the disability claim adjudicated by this decision.[3]

---

[2]As noted by the Commissioner, the ALJ specifically asked Plaintiff's attorney whether there were other exhibits not in the file, and counsel said, "no."  (R. 489).  In these circumstances, the ALJ cannot be faulted for believing he had a complete record.

[3]It appears that Dr. Kuch reviewed Plaintiff's reserve military medical records from 1976-1981 in connection with a claim for service-related disability.  They revealed that she sustained a stress fracture to her left hip.  From this and Plaintiff's subjective complaints, the

As for Dr. Alves records from 2003 and 2004, the pertinent inquiry is whether they are relevant to the period adjudicated by this decision. Wilson v. Apfel, 179 F.3d 1276, 1179 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period is necessarily prior to the date of the ALJ's decision."). By my review, these records reflect similar complaints of continuing discomfort by the Plaintiff, together with new complaints. (R. 432-66). There appear new complaints to this doctor of mid-back pain radiating to her front and breast, low back pain, impingement syndrome of the right shoulder, a decrease of problems with the left shoulder, some indication of bilateral carpal tunnel syndrome, and an apparently worsening condition with headaches and occipital neuralgia. In contrast to these findings, the objective evidence from this period, including an MR Angiogram of the intracranial vessels, an EEC, an EMG, and a MRI of the brain, were all within normal limits. (R. 436, 449, 450, 452). Plaintiff herself indicated in July 2004 that her chronic headaches were tolerable because of her medication. (R. 432). Overall, the records present something of mixed results, but even if they demonstrate a worsening of conditions and evidence of new impairments, the review by this court concerns whether Plaintiff was entitled to benefits on or before the ALJ's decision

doctor found a "direct connection between [the] fractured hip and the hip arthritis, back arthritis and spasm, and headaches which have rendered her 100% permanently and totally disabled for any occupation." (R. 481). The records contain no clinical support for the opinions, and in fact, the objective records accompanying these notes undermine the reliability of the conclusion. (R. 483-84). In an effort to relate the statement to the instant claim, counsel asked Dr. Kuch if his opinion on disability related back to "1999 when she was injured." (R. 485). While he opined that it did, the opinion appears entirely conclusory and unrelated to the Social Security disability claim, which stems from an injury in 1998.

in June 2002.  I cannot conclude that these new records are material to that time frame.  <u>See</u>
<u>Wilson</u>, 179 F.3d at 1279.

B.

Plaintiff contends that because of her knee impairment, carpal tunnel syndrome in
her right hand, post-disc surgery in her neck, with another herniation in her neck at C4-5, her
difficulty walking without cane, her inability to stoop, and her pain and terrible headaches,
she meets the equivalence of a listing.  Plaintiff cites neither to a specific listing nor does she
demonstrate the claimed equivalence with any particularity.

The listing of impairments in the Social Security Regulations identifies impairments
that are considered severe enough to prevent a person from engaging in gainful activity.  20
C.F.R. § 404.1525.  By meeting a listed impairment or otherwise establishing an equivalence,
a claimant is presumptively determined to be disabled regardless of her age, education, or
work experience.  <u>Id.</u>  Thus, an ALJ's sequential evaluation of a claim ends if the claimant
can establish the existence of a listed impairment.  <u>Edwards v. Heckler</u>, 736 F.2d 625, 628
(11th Cir. 1984).  However, at this stage of the evaluation process, the burden is on the
claimant to prove that she is disabled.  <u>Bell v. Bowen</u>, 796 F.2d 1350, 1352 (11th Cir. 1986);
<u>Wilkinson v. Bowen</u>, 847 F.2d 660, 663 (11th Cir. 1987).  In this circuit, a claimant must
present specific findings that meet or equal the various tests listed under the applicable listing.
<u>Bell</u>, 796 F.2d at 1353.  Mere diagnosis of a listed impairment is not enough as the record
must contain corroborative medical evidence supported by clinical and laboratory findings.
<u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991).  To "equal" a listing, "the medical

findings must be 'at least equal in severity and duration to the listed findings.'" <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1224 (11th Cir. 2002).

Here, Plaintiff provides neither argument nor evidence demonstrating that her impairments met or equaled a listing.  <u>See</u> <u>Wilkinson</u>, 847 F.2d at 662 (stating that the claimant must present evidence that describes how his impairment equals a listed impairment).  Because Plaintiff has failed to meet her burden of proof, she may not prevail on this claim.  <u>See</u> <u>Carnes</u>, 936 F.2d at 1218; <u>Wilkinson</u>, 847 F.2d at 662.

C.

Plaintiff's memorandum splatters a number of issues across several claims that relate to whether the ALJ has properly considered the medical evidence and evaluated her residual functional capacity (hereinafter "RFC").  In at least two instances, I agree with Plaintiff that the ALJ erred.  In particular, with regard to the ALJ's handling of the records from Dr. Angelo Alves, M.D., and other issues touching on the ALJ's determination of Plaintiff's RFC for a limited range of light work, I agree that there is evidence of error.  However, as set forth below, because the record ultimately supports a conclusion that Plaintiff can do sedentary work and the VE identified former sedentary jobs that Plaintiff could still perform consistent with her limitations, I conclude a remand would serve no useful purpose.

Plaintiff is initially correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  <u>Broughton v. Heckler</u>, 776 F.2d 960, 961 (11th Cir. 1985); <u>see also</u> 20 C.F.R. § 404.1527(d)(2).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to

12

do so is reversible error.  In this circuit, where the Commissioner has ignored or failed to refute properly the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The claim of error related to treating doctors, Dr. Harish Patel, M.D., and Dr. Angelo Alves, M.D., is predicated upon the Plaintiff's testimony that she suffers "migraine" headaches and experiences them one to two times a week.  By her account, the headaches last four to five hours and leave her essentially unable to function.  By the testimony of the VE, if the Plaintiff's migraines were as severe and frequent as she testified, Plaintiff was unemployable at any exertional level.  Plaintiff urges that the medical records of these treating doctors support her claim of extreme and debilitating headaches and that the ALJ ignored such evidence and inappropriately discounted their opinions by concluding that there was little evidence of problems with "migraines."

As Plaintiff urges, there were significant references to complaints of headaches throughout the records before the ALJ that certainly merited his consideration.  However, my review of Dr. Patel's records and the decision leads to the determination that the ALJ fairly and accurately considered this doctor's reports and conclusions.  As the decision reflects, Dr. Patel treated Plaintiff for complaints of headaches and neck pain between September 1998 and July 1999.  See (R. 347-66).  The decision reflects the ALJ's fair consideration of these

13

records and the doctor's impressions.[4]  (R. 24).  In fact, the medical record reveals little

evidence of "migraines," and the ALJ's conclusion in this regard is supported by substantial

evidence.

As for Dr. Alves, the matter is more problematic.  As his records reveal, Dr. Alves

first performed a neurological evaluation of Plaintiff in July 1999, and he treated Plaintiff

(according to the ALJ) through December 6, 2000, a date well after her January 2000,[5] by

cervical diskectomy and fusion by Dr. Jeffrey Walker.  (R. 93-122).  However, for reasons not

revealed by the decision, the ALJ addressed Dr. Alves's records only through his November

9, 1999, examination of Plaintiff and referral to Dr. Walker.  (R. 24).  The records of Dr.

Alves's treatment of Plaintiff *after* her surgery are not mentioned by the ALJ despite the

findings made therein.  As with Dr. Patel, the ALJ gave no express indication of the weight he

gave to Dr. Alves's findings or opinions.

In response, the Commissioner argues that the ALJ adequately evaluated these

doctors' reports which, while occasionally noting Plaintiff's complaints of headaches, did not

assess any specific functional limitation in connection with the condition.  By the

Commissioner's argument, the mere fact that the ALJ did not identify Plaintiff's headaches as

a severe impairment at step 2 of the evaluation process is no cause for a remand because the

---

[4]Plaintiff complains elsewhere that the ALJ overlooked a diagnosis by this doctor of
carpal tunnel syndrome.  This assertion is addressed below.

[5]As discussed above, Dr. Alves continued to treat Plaintiff subsequent to this date and
beyond to the Administrative hearing.  (R. 468-76).  Inexplicably, counsel failed to submit to
the ALJ her treatment records from 2001.

14

ALJ found in Plaintiff's favor at this step.[6]  The Commissioner urges that the ALJ also

considered these doctors' reports in deciding the Plaintiff's RFC at step 4.  Since these

doctors offered no specific limitations in connection with the headaches and the record as a

whole did not show Plaintiff restricted beyond the RFC assessment made by the ALJ, the

Commissioner urges that the ALJ assessed Plaintiff's headaches fairly.[7]

      After numerous readings of the decision and giving Plaintiff the benefit of the doubt,

I am unable to determine whether the ALJ properly reviewed the reports of Dr. Alves.

Clearly, there is no statement of the weight he gave to the doctor's records or opinions.  At a

minimum, under the standard applicable here, where the ALJ has failed to properly address or

refute the evidence and opinions of a treating doctor, such evidence and opinions must be

accepted as true.  Thus, by Dr. Alves's findings, Plaintiff suffered severe impairments related

to headaches/occipital neuralgia, cervical radiculopathy with pain in left shoulder and upper

extremity, mild to moderate impingement syndrome of the left shoulder, herniated disk at C4-

5, possible reflex sympathetic dystrophy syndrome (hereinafter "RSD") of the left upper

---

[6]The Commissioner cites Council v. Barnhart, No. 04-13128 (11th Cir. Dec. 28, 2004), in support of this argument.  In Council, the claimant urged that the ALJ should have found her mental impairment severe at step 2 of the evaluation process.  The court, however, found no error at step 2 because the ALJ had found in Council's favor at this step by concluding he had a severe impairment or combination of impairments, which is all the finding the ALJ must make at this step.  Id. at 4.  Under Council, there is no error at step 2 in Plaintiff's case, either.

[7]The Commissioner further notes that Plaintiff testified that to suffering headaches for twenty years, during which period she worked steadily.  Even after her June 1998 accident, she worked for nearly a year.  The Commissioner also notes that the headaches appear related to Plaintiff's neck and shoulder condition (as opposed to a separate condition).

extremity,[8] and was status post-cervical diskectomy at the C5-6 and C6-7 levels.[9]  As the Commissioner points out, however, the mere diagnosis of a condition is not itself sufficient to support a claim, as it is the functional impairments related to the medical conditions that must be examined.  While Plaintiff urges these records support her claims of debilitating headaches and a remand for an award of benefits, I conclude otherwise.

Dr. Patel's records do not speak to specific functional limitations.  On the other hand, Dr. Alves, in October and December 2000, noted functional limitations with Plaintiff's left arm; restricted range of motion in her neck and head; no impairment of motor strength of the upper extremities; decreased reflexes at the bicep and tricep level on the left arm compared to the right; decreased left hand grip compared to the right; and left shoulder impingement restricting arm elevation above 90 degrees.  He also makes reference to a functional capacity evaluation in his file from HealthSouth.  While these limitations are not insignificant to the overall assessment of Plaintiff's claim, as urged by the Commissioner, these records do not reflect any functional limitations related to the complaints of headaches/occipital neuralgia.[10]  Significantly, while these records indicate that Plaintiff

---

[8]Plaintiff elsewhere claims RSD as a severe impairment ignored by the ALJ.  A review of Dr. Alves's notes before the ALJ does not reflect a firm diagnosis of this condition. Compare ("a possible RSD left upper extremity, mild to moderate. . ." (R. 93)) with (". . . suggesting a touch of RSD and impingement syndrome of the left shoulder."  (R. 97)).  As noted above, the ALJ found in Plaintiff's favor at step 2, and as discussed below, he credited Plaintiff with limitations in her left upper extremity.  Thus, the failure to specifically address the possible RSD as a severe condition or otherwise is ultimately harmless.

[9]Dr. Patel's records reflect similar findings of headaches, neck pain, and cervical radiculopathy.

[10]My reading of these doctors' records suggests that the headaches/occipital neuralgia were believed to be related to the condition of her cervical spine, and as discussed below, the

consistently complained of headaches, nowhere does she report the severity or duration of headaches that she testified to at the administrative hearing.  In these circumstances, even accepting that the medical opinions of these doctors are correct and accurate, a remand for an award of benefits solely for the reasons set forth in this claim is not warranted.

The parties also dispute that the ALJ has assessed Plaintiff's RFC properly.  Plaintiff argues the ALJ has not fairly considered all her impairments[11] and inadequately addressed her complaints of headaches and other subjective complaints.  She urges that the records of Dr. Alves, Dr. Patel, and Dr. Dale Bramlett reveal that, at best, she can do sedentary level work.  As set forth above, the Commissioner denies any error in the assessment of her ability to do light exertional work.

As recognized by the ALJ, at step 4 of the evaluation process, he must assess a claimant's RFC, that is, her ability to do work related activities in a work setting on a regular and continuing basis, that is, for eight hours a day, five days a week, or an equivalent work schedule.[12]  The focus of this assessment is on the functional limitations and restrictions

_____

ALJ did assess certain limitations by reason of her cervical condition and left shoulder impingement.

[11]Plaintiff urges that in addition to failing to address pain and headaches, the ALJ did not mention her inability to stoop, her need for a cane, problems in connection with her hip, the "diagnosis" of RSD by Dr. Alves, a diagnosis of thoracic outlet syndrome by Dr. Lox, or problems with her left shoulder and carpal tunnel syndrome.

[12]The RFC assessment considers all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  Id.  If a claimant can still do the kind of work she has done in the past, then the Regulations require that she be found not disabled.  At this stage of the evaluation process, the burden is on the Plaintiff to show that she can no longer perform her past relevant work.  Jackson v. Bowen, 801 F.2d 1291,

arising from the medically determinable impairments.  Evaluation of the RFC also involves consideration of a claimant's subjective complaints.

In this circuit, subjective complaints such as pain, fatigue, or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  Id.; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In this circuit, case law also requires that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In Bowen v. Heckler, 748 F.2d 629 (11th Cir.

---

1292 (11th Cir. 1986).  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling.  In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.  Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

Upon consideration, to the extent Plaintiff claims the ALJ failed to follow these standards, the decision reflects otherwise.  However, to the extent that Plaintiff's hodgepodge of claims can be read to complain that the ALJ erred in concluding she was capable of performing light exertional work, I agree.  My reading of the medical record indicates the conclusion is unsupported by substantial evidence.  As she suggests, Plaintiff, at best, had the RFC for sedentary work.

Here, the ALJ concluded from his review of the medical record and Plaintiff's testimony that she had an RFC for lifting and carrying twenty pounds occasionally and ten pounds frequently, with an occasional limitation for prolonged walking, overhead reaching and pushing and pulling, and a frequent limitation for prolonged climbing and kneeling; but the capacity to perform fairly detailed tasks in an environment that allows for a sit/stand option. (R. 27).  In discounting Plaintiff's claims otherwise, he cited the medical record; her performance of some housework; a lack of mental health history; an ability to sit and answer all questions at the hearing without problem; the note by Dr. Walker on Plaintiff's credibility that he believed there was evidence of functional overlay and his conclusion that she could do light or sedentary work; the statement of Dr. Dennis Lox that Plaintiff was released to light

duty and later that she could do "desk work"; and finally, a statement by Plaintiff during her functional capacity evaluation (hereinafter "FCE") that her goal was to work in a different occupation for her same employer.  (R. 26-27).

While I find that the ALJ stated adequate reasons to discount Plaintiff's claim that her symptoms prevented her from doing any work, my own review of the medical record reveals that the opinions of treating doctors, Dr. Walker and Dr. Lox, actually indicate that Plaintiff was limited to sedentary work.  Thus, the ALJ overstated Plaintiff's actual RFC.  The ALJ was correct that Dr. Walker suggested an element of functional overlay to Plaintiff's complaints, but contrary to the ALJ's conclusion, this doctor, in his last report, concluded that Plaintiff "was able to do sedentary type work." (R. 175).[13]  Dr. Lox, who treated Plaintiff between September 2000 and May 2001 for complaints of pain over the thoracic and cervical spine and an exostosis[14] on the right iliac bone, noted in February 2001 that Plaintiff said she could do desk work and he agreed to her request for a note requesting an elevated phone with headset and a high-back chair.  (R. 159).  Significantly, the FCE ordered by Dr. Walker was

-----

[13]The ALJ cited an earlier note indicating Plaintiff's capacity to do light or sedentary work with no heavy lifting, repeated bending, or working with her hands over her head.  In this note, the doctor also recommended a FCE.  (R. 176).  This evaluation was thereafter performed, and the conclusion was that Plaintiff could do sedentary work.  This conclusion is reflected in Dr. Walker's later note of  July 2000.

[14]Among her various complaints, Plaintiff urges that the ALJ ignored the problems in her hip and thoracic spine.  However, the decision reflects otherwise.  See (R. 25).  Plaintiff did complain of hip pain.  The most specific records related to her complaints and treatment are from the June through September 2001 period.  Findings indicate she evidenced a full range of motion in her hip although there was a small exostosis on the right iliac.  After a period of conservative care, the Plaintiff  was advised to seek pain management, as Dr. Nantais could offer no further care, and no functional limitations were imposed.  (R. 302-08).  Similarly, the decision reflects the ALJ's consideration of Dr. Lox's treatment for complaints of thoracic pain as well as his ultimate conclusion that she could return to work.

all but ignored by the ALJ, see (R. 27), and by this assessment Plaintiff was limited to

sedentary work.[15]  By my reading of the record, this assessment was accepted both by Dr.

Walker and Dr. Alves, and it is uncontradicted by other evidence.   The ALJ's reliance on a

slightly different assessment by a nonexamining doctor, see (R. 26), is contrary to applicable

standards.  See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) ("The opinions of

nonexamining,  reviewing physicians, when contrary to those of examining physicians are

entitled to little weight in a disability case, and standing alone do not constitute substantial

evidence.").  Thus, I conclude the RFC assessment by the ALJ is not supported by substantial

evidence to the extent it allowed for light exertional work.  However, I again conclude that a

remand on this basis would serve no useful purpose.

---

[15]The summary of this assessment includes the following:

> Functional testing revealed that she is presently lifting in the sedentary category of work (according to U.S. Department of Labor Standards)as demonstrated by an occasional floor to knuckle lift of 24 lbs., knuckle to shoulder lift of 22 lbs., shoulder to overhead lift of 15 lbs., and carry of 15 lbs. 100 feet with pivoting.  Annie is able to frequently lift 9 lbs. on all of the above activities. . . . Annie demonstrated tolerance of walking, stair climbing, overhead reaching, kneeling, and push/pull on an occasional basis and standing, sustained and repetitive bending/stooping, forward and repetitive reaching, pivot twisting, fingering and grasping, writing, and fine motor and manual dexterity activities on a frequent basis.  Annie was able to sit on a constant basis, however, was unable to complete sustained or repetitive squatting/crouching activities secondary to right hip pain.

(R. 397).

As indicated above, the VE was asked to assume a person capable of light to sedentary work, "we're talking bottom light in (sic) all of sedentary[]" (R. 508-09),[16] with additional limitations.  In response to the ALJ's hypothetical, the VE identified both sedentary jobs and light exertional jobs that Plaintiff could perform under the hypothetical. See (R. 508-10).  Even if the ALJ should have limited the hypothetical to permit only sedentary exertional work with additional limitations, the fact remains that the VE identified sedentary jobs that Plaintiff could still perform.  Assuming the hypothetical adequately assumed the Plaintiff's other limitations, a remand for further review would serve no useful purpose.  See Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61; see also Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case).

D.

As for the other limitations considered by the ALJ, Plaintiff maintains they were inadequate because they failed to assume any limitations in connection with headaches and her need to lie down due to fatigue and weakness.  This issue is raised specifically in Plaintiff's claim concerning the adequacy of the hypothetical employed with the VE.  Plaintiff is correct that a hypothetical to a VE must comprehensively describe the claimants impairments.  See Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).  Where the

---

[16]Under the regulations, a finding that a claimant can do light work assumes that she can do sedentary work as well.  20 C.F.R. § 404.1567(b).

hypothetical fails in this regard, a decision based significantly on the opinion of the VE will be found to be unsupported by substantial evidence.  Id.

Here, Plaintiff complains that the ALJ's hypothetical questions to the VE failed to include any mention of headaches and her need to lie down due to fatigue and weakness.  The medical foundation for his assertion that Plaintiff suffered from such limitation was the reports fo Dr. Patel and Dr. Alves.  However, although the ALJ gave only short and limited attention to Dr. Alves's records, these records (or those of Dr. Patel) fail to support this extreme limitation claimed by Plaintiff due to her headaches.  Indeed, neither Dr. Alves nor any other doctor ascribed functional limitations of this sort or otherwise.  Given that this functional limitation is not demonstrated by the medical record, the ALJ was not required to include it in the hypothetical to the VE.

In any event, as the transcript of the hearing reveals, any error in this regard was cured by the examination by Plaintiff's counsel, who expressly questioned the VE about the limitation she claimed due to headaches.  See (R. 518-19).  Thus, as the Plaintiff phrases the claim, she is not entitled to further relief.  However, I have otherwise examined the hypothetical in light of my conclusion that the ALJ overstated Plaintiff's RFC.

In addition to the limitation for light to sedentary work, the ALJ assumed occasional limitations for prolonged walking, overhead reaching, pushing and pulling, and a frequent limitation for climbing and kneeling.  By the FCE, Plaintiff could sit constantly and demonstrated the tolerance for walking, stair climbing, overhead reaching, kneeling, and pushing/pulling on an occasional basis.  Further, she could stand, do sustained and repetitive bending/stooping, forward and repetitive reaching, pivot twisting, fingering and grasping,

23

writing, and fine motor and manual dexterity activities on a frequent basis.  Only

squatting/crouching on a sustained or repetitive basis was precluded according to the FCE.

The limitations assessed by the ALJ were consistent with the FCE.

According to the VE, Plaintiff's limitations as phrased by the ALJ would permit her

to perform her past work as an eligibility worker and as a family care worker, among other

jobs.  By his testimony both jobs are sedentary work, the former with an SVP of 6 and the

latter with an SVP of 7.  (R. 508-09).  According to the DOT, an eligibility worker under

DICOT § 195.267-010 must have the physical capacity for frequent reaching, handling,

talking, hearing, and near acuity, plus occasional fingering.  Here, the matter of talking,

hearing, or acuity was not at issue.  However, by the FCE, Plaintiff could do forward and

repetitive activities, finger and grasp activities, and fine motor activities on a frequent basis.

Therefore, the jobs, according to the DOT, did not require capabilities beyond those Plaintiff

was assessed to have.  As a result, I find that despite overstating the Plaintiff's exertional

capacity, the ALJ's finding (R. 29) that Plaintiff can perform her past work as an eligibility

worker is both consistent with her FCE and supported by the testimony of the VE.[17]  In these

circumstances, a remand is unwarranted.[18]

---

[17]Similarly, a family case worker under DICOT § 195.107-018 must have the physical capacity for occasional reaching, handling, and near acuity; and frequent talking and hearing. Again, these are capabilities Plaintiff was assessed to have, and as the ALJ determined, the job was one the VE testified Plaintiff could perform.  (R. 28).

[18]In reaching this conclusion, I have considered Plaintiff's claim that the decision violates SSR 83-14.  By her argument, SSR 83-14 "speaks of an individual who would lack bilateral manual dexterity.  Under this ruling, if the individual is a younger person and restricted to unskilled work and has a lack of bilateral manual dexterity, then a finding of disability is warranted." (Doc. 10 at 13).  In factual support, she cites to new evidence not before the ALJ.  I agree with the argument to the extent it concedes Plaintiff can do sedentary

24

E.

Plaintiff also complains of the ALJ's mischaracterization of the record from Dr. Dale Bramlett, who treated Plaintiff surgically for bilateral knee derangements and a suspected occult ulnar-based ganglion in her right wrist.  Plaintiff urges that the ALJ failed to acknowledge a comment by Dr. Bramlett, that he had done all he could for Plaintiff's knees until she needed a total knee replacement.  In her view, the comment confirms the severity of the problems she has with walking.  Plaintiff also argues that the ALJ failed to mention a comment by Dr. Alves that she was unable to work for at least six months, and she complains the ALJ failed to even mention a diagnosis of carpal tunnel syndrome.  I find no merit to any of these contentions.

First, the statement by Dr. Bramlett in March 2001, that he "would recommend conservative treatment until [Plaintiff] has progressed to the point that she is a candidate for total knee replacement.  She is to return in a year or sooner if her symptoms should worsen[]" (R. 201), does not speak to a disabling condition.  Taken at face value and when read in the context of this doctor's treatment records, the comment indicates that he had done all he could to relieve Plaintiff's symptoms and his conclusion indicates that Plaintiff should be treated conservatively until greater problems developed.  As the decision reveals, the ALJ credited Plaintiff's complaints of pain in her knees to the extent that they permitted occasional prolonged walking, a limitation consistent with her FCE.  Nothing in this comment would require a greater limitation, and I find no mischaracterization of this doctor's evidence.

---

work.  However, she is not limited to unskilled sedentary work and does not demonstrate from the medical record before the ALJ the necessary significant loss of bilateral manual dexterity.  The ruling simply does not apply here.

As indicated above, I further find fault with the manner in which the ALJ addressed Dr. Alves's records.  However, the failure to note his comment that Plaintiff was incapable of working for at least six months is of little consequence.  In the first instance, the decision on "disability" is left to the ALJ.  In any event, disability for a period of six months would not satisfy the minimum requirements of the Act.

Plaintiff's complaint that the ALJ ignored a diagnosis of carpal tunnel syndrome made by Dr. Patel overstates the medical evidence.  Dr. Patel's notes from July 1999 reflect a test result as follows: "(1) NCV-UES - 7/20/99: (R) CTS."  See (R. 347).  No other comment is made on these results, and nowhere does Dr. Patel diagnose Plaintiff with carpal tunnel syndrome or treat her for the condition.  Plaintiff's citation to records not before the ALJ in support of this argument is inappropriate.  In these circumstances, the failure of the ALJ to cite this test result is insignificant.

F.

To the extent that Plaintiff's claim that the ALJ failed to abide by the Eleventh Circuit "pain standard" needs further discussion, I find that the record reflects recognition of and the proper application of this standard.  (R. 26-27).[19]  Inherent in the above discussion and conclusions concerning Plaintiff's RFC is my conclusion that the ALJ was not obliged to fully credit her pain complaints, including her complaints of debilitating headaches.  At the bottom line, Plaintiff's credibility concerning her subjective complaints was undermined by the medical evidence, the statement of her surgeon casting her credibility in doubt, the

---

[19]Here, the failure of the ALJ to expressly reference the "pain standard" is of no consequence.  See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

26

treating doctors' assessment that she could work, and her own statements.  The decision reflects sufficient reasons to discount Plaintiff's claim that she was disabled from all work.  Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

G.

Plaintiff's next complains that the ALJ failed to fully and fairly develop the record by not requiring a psychiatric consultation in this case.  In fact, the record reflects that a psychological evaluation of Plaintiff was performed on November 12, 2001, by Peter M. Bursten, Ph.D., at the request of the Administration.  By his conclusion, which was based almost entirely upon Plaintiff's subjective complaints, Plaintiff suffered dysthymic disorder.  Beyond this, no functional limitations were assessed or noted by the doctor.  Plaintiff now contends that the ALJ should have ordered another consultative examination.[20]

In this circuit, an ALJ is obliged to obtain a consultative evaluation when such an evaluation is necessary for him to make an informed decision.  Holladay v. Bowen, 848 F.2 1206, 1209 (11th Cir. 1988).  Here, the ALJ fairly reviewed the conclusions in Dr. Bursten's report and other records touching on Plaintiff's mental state.  However, he discounted a severe mental impairment by reason of the lack of medical support for such condition and the fact that Plaintiff, despite having a degree in psychology, had never sought treatment for any mental health issue.  (R. 25-26).  Plaintiff neither demonstrates the error in this conclusion nor why an additional consultative evaluation was required before the ALJ could make an informed decision.

---

[20]Counsel made no such request at the administrative hearing.  (R. 506).

H.

Finally, Plaintiff complains that the ALJ engaged in "sit and squirm" jurisprudence when he noted that Plaintiff sat through the administrative hearing without obvious problems and answered all questions in an appropriate fashion.  This comment by the ALJ, an observation on her mental state, see (R. 26), does not reflect that the ALJ engaged in the type of "sit and squirm" jurisprudence condemned in this circuit.  See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).  There is simply no evidence in this statement that the ALJ employed a subjective index of traits to deny Plaintiff's claim.  Id.  Furthermore, under the regulations and case law, the ALJ may appropriately consider a Plaintiff's physical demeanor at the hearing as one of a number of factors in evaluating a Plaintiff's credibility without engaging in an improper practice.  See Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R.§ 404.1529(c)(3).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration, while not without error, should nonetheless be affirmed.  I recommend that court direct the Clerk to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
21st day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

28

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record