**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ANNIE M. HODGES-ROBINSON,**

    **Plaintiff,**

**v.**                                                     **Case No.  8:05-cv-472-T-27TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claim for a closed period of Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is not in accordance with the correct legal standards, I recommend that it be reversed and remanded.

I.

Plaintiff was fifty-five years old at the time of her administrative hearing in April 2008. Plaintiff has a degree in psychology. Her past relevant work was as an AFDC counselor, an adult and aged counselor, a foster care counselor, and a family support worker for the State of Florida. Plaintiff applied for disability benefits in September 2000, alleging disability as of May 21, 1999, by reason of pain in her back, neck, head, and shoulders and functional difficulty with walking, bending, and carrying. Plaintiff's application was denied originally and on reconsideration. A timely request for a hearing was made by Plaintiff, and a

hearing was conducted before an Administrative Law Judge (ALJ) on May 2, 2002, wherein Plaintiff was represented by counsel and testified in her own behalf.[1]  The ALJ issued an unfavorable decision on June 25, 2002, concluding that Plaintiff was not disabled and could perform her past relevant work as an eligibility worker.  The finding was based on a residual functional capacity for a limited range of light to sedentary work.  (R. 21-30).  Thereafter, Plaintiff appealed to this court and the case was remanded to the Commissioner for further proceedings under both sentence four and sentence six of 42 U.S.C. § 405(g).  (R. 563-69).  Specifically, the court ordered a remand for the ALJ to address the records and opinions of Dr. Alves, Plaintiff's treating neurologist, and specify the weight given to those records and opinions or the reasons for not affording them weight, as well as to address and resolve any inconsistencies between the opinions of Drs. Walker, Alves, and Lox.  (R. 565-67).  The Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ with instructions to consider whether Plaintiff was disabled during the period from her alleged onset date through June 25, 2002.[2]  (R. 572-73).

A second administrative hearing was conducted before the same ALJ on April 2, 2008, to address the closed period under review, i.e., between May 21, 1999, and June 25, 2002.  Plaintiff was again represented by counsel and testified on her own behalf.  In essence, Plaintiff recounted her testimony from the hearing conducted in May 2002.

---

[1] Plaintiff's testimony at this hearing (R. 488-506) is set forth in the Report and Recommendation dated February 21, 2006.  *See* (Doc. 16).

[2] During the pendency of these proceedings, on a subsequent application, Plaintiff was found to be disabled beginning June 26, 2002.  (R. 572).

Plaintiff testified that a suitcase fell on her head while transporting a child on an airplane and, as a result, her head and neck were injured. She went to work the next day, filled out a workman's compensation form, and went to a walk-in clinic. Plaintiff stopped working in May 1999. In 2001, Plaintiff asked her doctor if she could perform modified light duty work on a part-time basis. According to Plaintiff, she received a letter that she could go back to work light duty, "but the state would not honor it." Plaintiff tried a silk flower business in 2003. She made bouquet flowers for her church on Mother's Day, and still does every year.

Plaintiff underwent neck surgery, a fusion with plate and screws, in January 2000. Then, in 2001, Plaintiff had surgery for ligament damage in her right hand. She also had surgery on her left knee. Plaintiff believes that she also had surgery on her right shoulder during the same time period.[3] Plaintiff testified that her pain continued even after the surgeries. According to Plaintiff, on a scale of one to ten, her pain during the pertinent period was about a five and it was constant. Plaintiff underwent physical therapy and saw a pain management specialist who gave her injections in her neck. She also got injections in the upper area of her shoulder and back. Plaintiff indicated she had severe pain in her lower back. She was given a back brace but was unable to wear it. Plaintiff also testified to having migraine headaches one to two times a week. When they occurred, she had to lie down and sleep it off. They rendered her "out of commission." As for medication, Plaintiff testified

---

[3]Plaintiff also testified to earlier injuries, i.e., those that predated her instant claim. Plaintiff served for twenty-two and a half years in the military. She injured her lower back lifting a dolly mat. She also injured her back when she was transporting some kids while employed by the state.

3

that she was taking Imitrex, Vicodin, and Zanoflex. The medications made her sleep a lot and itch. Plaintiff would lie down each time she took medication. She testified that she had to lie down three to four times a day for three to four hours each time. Plaintiff testified that she only slept four hours a night due to pain and muscle spasms.

Plaintiff also testified that she had problems with depression during the pertinent period. According to her, it resulted in low self esteem, difficulty driving due to "blacking out," and frustration. She took medication for depression via samples from her doctors.

As for her physical capabilities during the pertinent period, Plaintiff testified that she could not sit in a chair for six hours out of an eight-hour day because it would be too uncomfortable and her back would hurt. She estimated that during that time period, she could only sit comfortably for about twenty minutes at a time. Plaintiff testified that she would not have been able to stand or walk for two hours out of an eight-hour day because her upper back would start hurting. In her estimate, she would have been able to walk for "about five minutes maybe. No more than twenty." She also would have been able to stand comfortably for about five minutes. As for lifting, Plaintiff estimated that she would have been able to lift no more than ten to fifteen pounds. And, because of her right hand damage/tingling, Plaintiff testified that she would drop things three to four times a day.

Plaintiff testified to limited daily activities during the period at issue. Her daughter, mother, and husband fixed meals, and her husband and daughter did the household chores. Plaintiff cleaned the sink and did some laundry but could not take clothes out of the dryer. Plaintiff did not socialize, garden, or have any hobbies. She had difficulty reading because

she could not concentrate on or comprehend what she was reading.  She also had difficulty driving.

When asked by the ALJ why there were no medical records from the period of time August 2001 to January 2003, Plaintiff explained that, "I was going through a period of depression during that time, and I was trying to wait out my depression, and I guess I was going to I think (inaudible) a different doctor, pain management doctor, and I was just seeking different doctors and just waiting out my pain, and I was getting frustrated, staying at home." (R. 596-613).

The ALJ also took testimony from Teresa Manning, a vocational expert (VE).  In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education, and work history, capable of performing light to sedentary work with occasional limitations for prolonged walking, standing, reaching overhead, pushing and pulling and a frequent limitation for climbing and kneeling, and the ability to perform fairly detailed tasks in an environment that authorized a change of position at will.  On such hypothetical, the VE opined that such individual could perform Plaintiff's past work of an eligibility worker, family support worker, and public assistance worker.  Upon questioning from Plaintiff's counsel, the VE indicated those jobs still would be available if the individual could only stand and walk five minutes at a time, sit for twenty minutes at a time, and could not stoop.  Likewise, all jobs would remain even if the individual would drop things three to four times a day due to difficulties with both hands.  However, if the individual could stand or walk for only one hour out of an eight-hour day and sit for only two hours in an eight-hour day, the VE opined the jobs would be eliminated.  Additionally, if the individual had to lie

down every day because of pain and had to lie down one to two time a week due to migraines, the VE opined the jobs would be eliminated. If the individual missed two days a month on a consistent basis, the VE conceded it would likely exceed the normal rate of acceptable absenteeism. (R. 614-18).

By his decision of July 22, 2008, the ALJ determined that while Plaintiff had severe impairments during the period from May 21, 1999, through June 25, 2002, related to multi-level degenerative disc disease of the cervical spine, with herniations and radiculopathy, status post-anterior cervical diskectomy and fusion, with residual pain deemed consistent with reflex sympathetic dystrophy; headaches; left shoulder impingement syndrome; and bilateral degenerative disease in each knee, status post surgeries, she nonetheless had the residual functional capacity to perform a limited range of light to sedentary work that required the ability to perform detailed tasks in an environment that allowed for a change of position at will with occasional limitations for prolonged walking, standing, overhead reaching, and pushing/pulling and a frequent limitation for climbing and kneeling. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as an eligibility worker, family support worker, and public assistance specialist during the period from May 21, 1999, through June 25, 2002. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 548-56). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

Consideration of the Plaintiff's claims is governed by certain principles. To prevail on a claim for Social Security disability benefits, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Remand and Reversal Demanded with an Immediate Award of Benefits - Failure to Follow Order of U.S. District Court and of Appeals Council;

(2) Remand and Reversal Demanded with an Immediate Award of Benefits - Failure to Properly Weigh Opinions of Treating Physician Dr. Alves; and

(3) Remand and Reversal Demanded with an Immediate Award of Benefits - Hypothetical to the VE Incomplete and When Proper Questions are Asked Disability Mandated.

Plaintiff's first two claims are related and addressed together. By these claims, Plaintiff faults the ALJ for not following the remand orders entered by this Court on March 28, 2006, and the Appeals Council on January 3, 2007, particularly with respect to the opinions of treating physicians. (Doc. 30 at 3-6). The Commissioner counters that substantial

evidence supports the ALJ's findings and conclusions that Plaintiff was not disabled during the relevant period and that Plaintiff fails to demonstrate otherwise.  (Doc. 33 at 4-11).

In pertinent part, the Order of March 28, 2006, concluded that a remand was warranted for the ALJ to (1) consider the records of Angelo M. Alves, M.D., Plaintiff's treating neurologist, and specify the weight given his records and opinions and any reasons for not giving them weight, (2) resolve any inconsistencies between the opinions of Plaintiff's treating physicians, namely Dr. Alves, Dennis M. Lox, M.D., a physiatrist, and Jeffrey S. Walker, M.D., a neurosurgeon, and to explain the weight, if any, he gave to those opinions, and (3) consider Dr. Alves' 2003-2004 records and opinions.  (R. 563-69).  Thereafter, the Appeals Council, in it Order of remand, specifically directed the ALJ to:

> Obtain the medical evidence concerning the claimant's cervical and lumbar spine impairments for the year 2002 in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512.1513).
>
> Give further consideration to the opinions of Drs. Alves, Walker and Lox pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p and explain the weight given to such opinion evidence and resolve any inconsistencies in the opinion evidence.
>
> Evaluate Dr. Alves' 2003-2004 treatment records and determine whether any of this evidence relates to the period on or before June 26, 2002.

(R. 572-73).  By my consideration, the ALJ failed to abide by these directives.

In his decision dated July 22, 2008, the ALJ recounted the procedural history of the case, including the remand orders issued by this Court and the Appeals Council.  (R. 548-49).

9

The ALJ discussed Dr. Alves' records from 1999 and 2000, including the doctor's opinion that Plaintiff was "totally and permanently disabled." (R. 551-52). As for Dr. Alves' records from 2003-2004, the ALJ mentioned in passing, while addressing Plaintiff's credibility, that "[w]hile Dr. Alves later opined in 2004 that the claimant had significant limitations, and while he may have alluded to such a limitation earlier, . . ." (R. 554-55). The ALJ did not address with any degree of specificity Dr. Alves' Statement of Physical Capabilities completed in July 2004, wherein the doctor opined that Plaintiff could: occasionally lift/carry ten-fifteen pounds and frequently lift/carry five pounds; stand and/or walk one hour in an eight-hour day and without interruption for ten to fifteen minutes; sit for two hours in an eight-hour day and for thirty minutes without interruption; and occasionally balance and stoop but never climb, crouch, kneel or crawl, and was affected in her ability to reach, handle, feel, and push/pull. (R. 477-78). In Dr. Alves' opinion, those limitations predated June 25, 2002. (R. 480). The ALJ also summarized the records from Dr. Walker, which indicated that Plaintiff could do "sedentary type work,"[4] and Dr. Lox, which revealed Plaintiff was released to "light duty status."[5] (R. 552-53). The ALJ also discussed the records of Dale G. Bramlet, M.D., a treating orthopedist, who opined that Plaintiff should perform "light-duty only jobs with no excessive squatting, bending, or lifting."[6] (R. 553). The ALJ did not mention the

---

[4]Dr. Walker opined in July 2000 that, "I think [Plaintiff] is able to do sedentary type work." (R. 175). In May of 2000, he opined that Plaintiff "has permanent restrictions of no heavy lifting, repeated bending, working with her hand over her head." (R. 176).

[5]Dr. Lox noted in August 2001 that Plaintiff was continued on "light duty with a 10 pound lift restriction," and released on "light-duty status" in February 2001. (R. 158, 206).

[6]This opinion predated Plaintiff's alleged onset date. Dr. Bramlet subsequently noted additional limitations. (R. 241).

residual functional capacity assessment opinions of the state agency doctors[7] or the functional capacity evaluation ordered by Dr. Walker and completed by a physical therapist.[8]  When assessing Plaintiff's residual functional capacity, the ALJ stated that he stood by his earlier determination because it was consistent with the record evidence.  According to the ALJ, three sources indicated that Plaintiff could do light work and/or lift twenty-four pounds frequently, namely, those at Exhibit 5F (R. 156-59, Dr. Lox), 8F (R. 190-301, primarily Dr. Bramlet), and 10F (R. 309-311, Peter M. Bursten, Ph.D.).[9]  (R. 554).  Lastly, as for the weight accorded the medical opinions of record, the ALJ stated that, ". . . the opinions of Dr. Lox,

---

[7]In February 2001, a non-examining doctor opined that Plaintiff retained the functional capacity to perform light exertional work that did not require more than occasional push/pull with the left arm, postural activities, reaching in all directions with the left arm, and handling and fingering with the left arm/hand, and should avoid concentrated exposure to hazards.  (R. 123-130).  In October 2000, another non-examining doctor opined that Plaintiff retained the functional capacity to perform light exertional work with occasional postural limitations and could rarely push/pull with the left arm, never climb ladders/ropes/scaffolds, never reach with left arm, frequent handling/fingering/feeling on with left arm/hand, and had to avoid concentrated exposure to hazards.  (R. 402-09).

[8]The summary of this assessment includes the following: "Functional testing revealed that she is presently lifting in the sedentary category of work (According to U.S. Department of Labor Standards) as demonstrated by an occasional floor to knuckle lift of 24 lbs., knuckle to shoulder lift of 22 lbs., shoulder to overhead lift of 15 lbs., and carry of 15 lbs. 100 feet with pivoting.  Annie is able to frequently lift 9 lbs. on all of the above activities. . . . Annie demonstrated tolerance of walking, stair climbing, overhead reaching, kneeling, and push/pull on an occasional basis and standing, sustained and repetitive bending/stooping, forward and repetitive reaching, pivot twisting, fingering and grasping, writing, and fine motor and manual dexterity activities on a frequent basis.  Annie was able to sit on a constant basis, however, was unable to complete sustained or repetitive squatting/crouching activities secondary to right hip pain."  (R. 397).

[9]Dr. Bursten performed a consultative psychological evaluation in November 2001.  It appears that the ALJ mistakenly referred to this when stating Plaintiff could perform light work.

11

Dr. Walker, Dr. Bramlet, and the State agency opinions outweigh the contrary assessments from Dr. Alves." (R. 555).

An ALJ commits legal error when he or she does not follow the mandate of the court. As the Supreme Court has explained:

> Where a court finds that the [Commissioner] has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.

*Sullivan v. Hudson,* 490 U.S. 877, 885-86 (1989) (citations omitted); *see Leonard v. Astrue*, No. 2:0-cv-871-Ftm-29SPC, 2010 WL 338099, at *4 (M.D. Fla. Jan. 22, 2010) (citing *Sullivan*); *Tauber v. Barnhart*, 438 Fed. Supp. 2d 1366, 1376 (N.D. Ga. 2006) (finding ALJ committed legal error by failing to follow remand order requiring further development of the record).

Similarly, an ALJ errs when he or she fails to follow an order of the Appeals Council. *See* 20 C.F.R. § 404.977(b) (stating that, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council . . .). That error constitutes a basis to reverse the ALJ's decision and remand the case for further proceedings when a reviewing court concludes that the error is not harmless.[10] *Pearson v. Barnhart*, No. 1:04-cv-300, 2005

---

[10] An error is harmless where it is inconceivable that a different administrative result would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank*, 326 F3d at 622)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (providing that error is harmless unless there is reason to think that remand might lead to a different result); *Stout v. Comm'r of Soc Sec. Admin.*, 454 F.3d 1050,

WL 1397049, at *4 (E.D. Tex. May 23, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).  District courts have found that failure to abide by an order of the Appeals Council may constitute reversible error.  *Pettaway v. Astrue*, No. CA 08-0171-C, 2008 WL 5111175, at *4 (S.D. Ala. Dec. 3, 2008); *Allen v. Astrue*, No. 06-cv-018, 2007 WL 1276933, at *3 (E.D. Pa. May 1, 2007); *but see Sanabria v. Astrue*, 8:06-cv-2252-T-30TGW, 2008 WL 687391, at *3 (M.D. Fla. Mar. 11, 2008) (noting that plaintiff failed to cite any authority supporting proposition that a failure to follow directions from the Appeals Council constitutes reversible error); *Kastman v. Barnhart*, No. 01 C 0150, 2002 WL 1461499, at *9 (N.D. Ill. July 3, 2002) (expressing doubt as to whether that type of agency action should be reviewed by the court as a final decision subject to judicial review).

Additionally, in this circuit, the ALJ must state with particularity the weight given to different medical opinions and the reasons for the weight given, and failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  And, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232,

---

1055 (9th Cir. 2006) (defining harmless error in context of social security cases as not affecting the ultimate determination of disability).  The Eleventh Circuit has not defined the scope of harmless error inquiry in this context.

1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.[11]  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Upon a thorough review of the decision, the administrative record, and the parties' arguments, I am constrained to conclude that, at a minimum, a remand is again warranted. The ALJ has committed legal error by not following the Order of this Court on remand, and by not following the SSA's regulations which require adherence to the remand orders of the Appeals Council.  *See Hudson,* 490 U.S. at 885-86; 20 C.F.R. § 404.977(b).  In particular, the ALJ flouted the Orders by failing to state the weight accorded Dr. Alves' opinions.  While it is clear that the ALJ did not credit the doctor's opinion of October 2000 that Plaintiff was "still totally and permanently disabled for any kind of gainful employment," (R. 98), he fails to provide adequate reasons for discounting it outright.  Further, it is unclear whether the ALJ adequately considered Dr. Alves' Statement of Physical Capability (R. 477-78) and his opinion that the limitations described therein predated June 25, 2002 (R. 48).  The failure to do so is significant in that the opinions contained therein allow for less than a sedentary level of work which would render Plaintiff disabled.  Additionally, the ALJ also failed to state the weight accorded the opinions of the other treating physicians, namely, Drs. Bramlet, Walker,

---

[11]*But see Winschel*, 631 F.3d at 1179; *Albery v. Comm'r of Soc. Sec.*, No. 6:11-cv-437-Orl-19GJK, 2012 WL 2589297, at * 10-11 (M.D. Fla. June 7, 2012) (recognizing that the Eleventh Circuit recently has receded from the "take it as true" language).

14

and Lox, and to address any inconsistencies in their opinions.[12]  It is also worth noting that the ALJ further muddied the water by failing to address the functional capacity evaluation and the opinions of the nonexamining state agency doctors, which include additional limitations that could significantly impact Plaintiff's ability to work.[13]  In sum, the ALJ's failure to follow the Orders on remand and to state the weight accorded the medical opinions of record constitute reversible error.

While a remand for proper application of the applicable standards is again in order, in light of the ALJ's repeated errors and continued inadequate review of the whole of the medical evidence, I find it more appropriate to recommend that Plaintiff's case be reversed and remanded for an award of benefits consistent with Dr. Alves' opinion of October 2, 2000. *See MacGregor*, 786 F.2d at 1053.  Because the opinions of Drs. Lox and Walker were rendered before that date, they are not inconsistent with an opinion that Plaintiff was subsequently unable to work.  As set forth in Dr. Alves' Statement of Physical Capabilities completed in July 2004, Plaintiff was limited below sedentary exertional work and by this treating doctor's opinion, those limitations predated June 25, 2002.  (R. 480).  Given his earlier opinion in October 2000 and the lack of significant medical evidence inconsistent

---

[12] Here, the ALJ labeled these doctors' opinions as permitting light or sedentary work.  However, that is not what they actually stated and there is no indication that the treating doctors were familiar with the regulatory definitions of sedentary or light exertional work such that the ALJ could draw such conclusions.

[13] For example, the nonexamining doctors found that Plaintiff had occasional postural limitations, could rarely or occasionally push/pull with the left arm, could never or occasionally reach with the left arm, and had limited ability to handle/finger with the left hand.  (R. 123-30, 402-09).  The FCE also documented a frequent limitation for forward and repetitive reaching, fingering and grasping, writing, and fine motor and manual dexterity activities.  (R. 397).

therewith, an award of benefits as of that date seems entirely appropriate. Should the Court disagree, I recommend that Plaintiff's case be reversed and remanded for further proceedings consistent with this report. In that event, I recommend further that the court direct that a different ALJ be assigned to the case.

Given the recommendation for remand on both issues above, Plaintiff's third claim of error need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). Nonetheless, should the case be reversed and remanded for further proceedings, the ALJ should be cautioned to address with specificity Plaintiff's claim of debilitating headaches during the pertinent period and the extent to which the same are supported or consistent with Dr. Alves' 2003-2004 opinions.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for an award of benefits or, in the alternative, for further proceedings before the Commissioner consistent with this Report and Recommendation. To avoid the same errors on remand, I also recommend that Plaintiff's case be remanded to a different ALJ. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted on this
28th day of August, 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies to:
United States District Judge
Counsel of Record